No. 938 October 29, 2025 527

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BENJAMIN GUTHRIE KOTEEN,
*Defendant-Appellant.*

Deschutes County Circuit Court
23CR17735; A183933

Alicia N. Sykora, Judge.

Argued and submitted October 6, 2025, Lakeview High School, Lakeview.

Morgen Daniels, Deputy Public Defender, argued the cause for appellant. On the brief were Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kelsey T. Townsend, Deputy Public Defender, Oregon Public Defense Commission.

Jordan Silk, Assistant Attorney General, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, Shannon T. Reel, Assistant Attorney General, and Hunter Briggs, Certified Law Student.

Before Tookey, Presiding Judge, Lagesen, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Defendant appeals a judgment of conviction, entered after a conditional guilty plea, for one count of driving under the influence of intoxicants, ORS 813.010. In his only assignment of error, defendant contends that the trial court erred when it denied his motion to suppress evidence that derived from a traffic stop. In particular, as relevant to our analysis, defendant contends that the officer who stopped him lacked probable cause to believe that defendant committed the offense of "failure to drive within a lane" as set forth in ORS 811.370(1). That statute provides, in relevant part, that "a person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not *** [o]perate the vehicle as nearly as practicable entirely within a single lane." *Id*. Because we conclude that the officer who stopped defendant had probable cause to believe that defendant violated ORS 811.370(1) when he failed to drive within a lane, we affirm.[1]

HISTORICAL FACTS AND PROCEDURAL HISTORY

"We are bound by the trial court's findings of fact so long as those facts are supported by the record." *State v. Husk*, 288 Or App 737, 738, 407 P3d 932 (2017), *rev den*, 362 Or 665 (2018). "When the record is silent as to how the court resolved a pertinent factual dispute, we presume that it found the facts consistently with its ultimate conclusion." *Id*. We state the facts in accordance with our standard of review.

Shortly after midnight, defendant was driving through "one of the busiest areas in downtown Bend," near a 24-hour convenience store and a homeless shelter. After passing through an intersection on a relatively straight stretch of road, defendant's car abruptly shifted to the right and the

---

[1] Defendant also contends that the officer lacked probable cause to believe defendant drove carelessly in violation of ORS 811.135(1) ("A person commits the offense of careless driving if the person drives any vehicle upon a highway or other premises described in this section in a manner that endangers or would be likely to endanger any person or property."). Because we conclude that the officer had probable cause to believe that defendant committed the offense of failure to drive within a lane, ORS 811.370(1), we need not address defendant's arguments concerning careless driving.

car's front and back tires crossed from the traffic lane that he was driving in into a bicycle lane, which was "obviously marked clearly and boldly as a bicycle lane." Defendant's car was in the bicycle lane for about two seconds before it reentered the traffic lane by gradually moving to the left. At some point during the two seconds that defendant's car was in the bicycle lane, defendant's car was "occupying much of, if not most of, that bicycle lane," and, as found by the trial court, about one-third of defendant's car was in the bicycle lane. Further, although defendant's car was not traveling at a "high rate of speed" when it entered into the bicycle lane—that is, it was traveling "below highway speed"—the "acceleration [of defendant's vehicle] appeared to be fast."

A police officer who was following defendant's car observed defendant's driving, perceived what he believed to be approximately "half" of defendant's car enter the bicycle lane, and based on his observations, the officer believed that he had probable cause to stop defendant and cite him for failure to drive within a lane.

The officer activated his emergency lights, defendant stopped his car, and the officer ultimately arrested defendant for driving under the influence of intoxicants.

After being charged with driving under the influence of intoxicants, defendant moved to suppress the evidence that the officer obtained after stopping defendant's car, arguing that the officer did not have probable cause to believe that defendant failed to drive within a lane in violation of ORS 811.370. Defendant contended that the lane "deviation"—*i.e.*, entering the bicycle lane—was "momentary and minor," and under this court's decision in *State v. Little*, 326 Or App 788, 533 P3d 1107 (2023), "a momentary and minor deviation over a lane line is not a violation of ORS 811.370." The state responded that although defendant's lane deviation "could be considered momentary," it was not "minor."

The trial court denied defendant's motion to suppress, concluding that the officer had probable cause to believe that defendant had committed the traffic infraction of failure to drive within a lane. In reaching its conclusion,

the trial court reasoned that defendant was not driving in "a rural area" but in "one of the busiest parts of Bend," "downtown Bend," and that the "safety risk matters." And, after entering a conditional guilty plea for one count of driving under the influence of intoxicants, defendant appealed the resulting judgment of conviction, arguing that the trial court erred in denying his motion to suppress.

## ANALYSIS

"Under Article I, section 9, of the Oregon Constitution, before a police officer may stop a citizen for a traffic violation, the officer must have probable cause to believe that a violation occurred." *Husk*, 288 Or App at 739. "An officer has probable cause when two conditions are met." *Id.* "First, the officer must subjectively believe that an offense occurred." *Id.* "Second, the officer's subjective belief must be objectively reasonable; that is, the facts as the officer perceived them must satisfy the elements of an offense." *Id.* Thus, "an officer's belief may be objectively reasonable even if the officer is mistaken as to the facts." *State v. Murphy*, 273 Or App 566, 569, 359 P3d 507 (2015). "Whether the facts establish probable cause to stop someone for a traffic violation is a question of law that we review for legal error." *Husk*, 288 Or App at 739.

On appeal, defendant does not dispute that the officer who stopped him subjectively believed that defendant had violated ORS 811.370(1)(a) at the time of the stop. He argues, however, that the officer's belief was not "objectively reasonable" because, under *Little*, "a single, momentary, and minor lane deviation does not establish objective probable cause for failure to drive within a lane." In support of his argument, defendant contends that the lane deviation at issue here lasted for only two seconds; "[a]t most, one-third of the car crossed over the line before defendant quickly corrected and continued driving straight"; and the lane deviation was "*de minimis*."

Defendant also argues that it was error for the trial court to have considered that the "lane deviation occurred in 'downtown Bend,' not in a 'rural area,'" which, in the trial court's view, created a "'safety risk.'" As defendant sees it, a

court may consider the "safety risk" posed by a defendant's lane deviation, but in doing so it may only consider the "nature of the [lane] deviation itself."

The state responds that the officer had probable cause to stop defendant because "defendant's conduct constituted more than a *de minimis* deviation from the lane of travel." In support of that argument, it contends that "while driving on a straight road, defendant swerved so that one-third the width of his vehicle was in the bicycle lane for two seconds."

ORS 811.370(1) sets forth the offense of failure to drive within a lane. It provides:

"Except as provided in subsection (2) of this section, a person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not:

"(a)  Operate the vehicle as nearly as practicable entirely within a single lane; and

"(b)  Refrain from moving from that lane until the driver has first made certain that the movement can be made with safety."

In considering the meaning of ORS 811.370, we have explained that "[a] momentary and minor deviation over a lane line is not a violation of ORS 811.370." *Little*, 326 Or App at 789. That is because, by using the phrase "'as nearly as practicable'" in ORS 811.370(1)(a), the legislature intended to "provide[ ] flexibility to drivers as they attempt to comply with the requirement to stay 'within a single lane.'" *Id.* at 792 (quoting ORS 811.370(1)(a)). That is, "the legislature did not intend to require exact compliance with ORS 811.370 at all times." *Id.* We have also explained that what is "'practicable *** depends on the circumstances of each case." *Husk*, 288 Or App at 740.

Under our case law, consideration of the "circumstances" in determining whether a driver failed to "[o]perate the vehicle as nearly as practicable entirely within a single lane" under ORS 811.370(1)(a) appropriately includes consideration of both the lane deviation itself and whether, because

of some hazard in the road or other circumstance, operating the vehicle entirely within a single lane was not "practicable." *Little*, 326 Or App at 794-95 (considering whether lane deviation was "momentary" and "minor"); *Husk*, 288 Or App at 740 (concluding ORS 811.370 does not require "a driver to operate his or her vehicle entirely within a single lane" if "something makes it impracticable to do so, such as a road hazard or some other valid reason" (internal quotation marks omitted)). And specifically, as "we have construed it, [ORS 811.370] allows both for (1) lane deviations when the circumstances make it impracticable for a driver to maintain their lane, and (2) momentary and minor lane deviations, in the absence of circumstances making compliance impracticable." *State v. Harmon*, 344 Or App 466, ___ P3d ___ (2025) (internal quotation marks and brackets omitted).

ORS 811.370(1)(a) does not, however, allow for consideration of whether there were other "vehicles, bicycles, or pedestrians on the roadway" in addition to the defendant's vehicle. *See State v. Rosling*, 288 Or App 357, 363, 406 P3d 184 (2017), *rev den,* 362 Or 389 (2018) (rejecting "defendant's request that we construe [ORS 811.370(1)(a)] as allowing drivers to operate a vehicle outside a single lane so long as there are few other vehicles, bicycles, or pedestrians on the roadway" and concluding that "[t]he statute allows for no such consideration"). That is, it does not allow for consideration of whether the lane deviation created a "safety risk" to members of the public who may be present.

In *Little*, for example, we considered whether an officer had probable cause to stop the defendant for failure to drive within a lane in violation of ORS 811.370. 326 Or App at 789. In that case, at approximately 9:00 p.m., as the defendant "was turning to exit Highway 380 onto Juniper Canyon Road, his back right passenger tire drove over the fog line by the width of a tire"—approximately six inches—"and stayed there for approximately 1.5 seconds," which the trial court had "characterized as *'de minimis.'*" *Id.* at 790, 794. We explained that given the defendant's conduct at issue in *Little*, the "defendant did not fail to remain as nearly as practicable entirely within a single lane." *Id.* at 794-95 (internal quotation marks omitted). That is, we

determined that the defendant's conduct constituted "a momentary and minor lane deviation, such that he operated his vehicle as 'nearly' as practicable within a single lane." *Id.* at 794. Consequently, we concluded that the officer who stopped the defendant's vehicle lacked probable cause to do so. *Id.* at 794-95.

In some circumstances, however, a single "digression" from a traffic lane can provide probable cause to believe a driver has committed the offense of failure to stay within a lane as set forth in ORS 811.370. In *State v. McBroom*, 179 Or App 120, 39 P3d 226 (2002), for example, we concluded that an officer had probable cause to believe that the defendant had failed to stay within his lane in violation of ORS 811.370(1) when the defendant "drove for more than 300 feet on the center line for no apparent reason," *i.e.*, there was "nothing in th[e] record * * * to suggest that defendant failed to stay within his lane because he was responding to an apparent hazard or because he had some other valid reason for leaving his lane." *Id.* at 125.

In this case, although we agree with defendant that under *Little* "a single, momentary, and minor lane deviation does not establish objective probable cause for failure to drive within a lane," we disagree with him that the lane deviation at issue in this case, as it was perceived by the officer, is "minor" (even if it was "momentary") and akin to the lane deviation that we concluded was insufficient to establish probable cause in *Little*. As explained above, in *Little*, one tire on the defendant's car crossed over the fog line by approximately six inches while defendant was negotiating a turn. 326 Or App at 790. Here, in contrast, while defendant was driving straight, his car abruptly shifted to the right and the officer who was observing defendant's driving perceived approximately "half" of defendant's car move into the bicycle lane, and it was "occupying much of, if not most of, that bicycle lane."[2] Further, as in *McBroom*, in this

_____

[2] As noted, the trial court found that about one-third of defendant's car was in the bicycle lane, while the officer's perception was that approximately half of defendant's car was in the bicycle lane.

We have viewed the video from the officer's dashboard video camera. Both one-third and approximately half appear to be within the range of reasonable estimates for the fraction of defendant's car that was in the bicycle lane.

case, there was no "apparent hazard" or "other valid reason for [defendant] leaving his lane." 179 Or App at 125. Thus, considering "the circumstances" present in this case, *Husk*, 288 Or App at 740, we conclude that the officer's belief that defendant had violated ORS 811.370(1)(a) was objectively reasonable.

Affirmed.

---

Ultimately, however, it makes no difference to the outcome whether it was one-third or approximately half because, regardless of the precise fraction, a substantial portion of the defendant's car was driving in the bicycle lane, so the deviation was not a minor one.